# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

KESHAV G. MANGAL and
MUKESH MANGAL                                                               PLAINTIFFS

v.                                                         CAUSE NO. 1:19CV232-LG-RHW

CITY OF PASCAGOULA, JACKSON
COUNTY, MS                                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**BEFORE THE COURT** is the [3] Motion to Dismiss filed by Defendant City of Pascagoula. The Motion argues that Plaintiffs' Complaint should be dismissed because it fails to state a claim for relief. Plaintiffs responded to the Motion, and Defendants filed a reply brief. Because Plaintiffs failed to adequately address the legal arguments raised in Defendant's Motion – including whether their takings claim is ripe – the Court ordered supplemental briefing. (*See* Order Taking Under Advisement Motion to Dismiss, ECF No. 11.) Each side has submitted a supplemental brief. Having considered the submissions of the parties, the record, and relevant law, the Court finds that Defendant's Motion to Dismiss should be granted.

## I. BACKGROUND

Plaintiffs Keshav Mangal and Mukesh Mangal owned a four-plex property located on Jackson Avenue in Pascagoula, Mississippi. According to their Complaint, the City of Pascagoula attempted to exercise eminent domain and take their property under a "quick take" procedure for the purpose of expanding city-

owned athletic fields. The City filed suit in the Special Court of Eminent Domain of Jackson County, Mississippi, paid 85% of a court-appointed appraiser's determined appraisal value for their property into the eminent domain court's registry, and gained immediate possession of Plaintiff's property. Plaintiffs assert that the City had no right to utilize the statutory "quick take" procedure, but nonetheless did so and mailed Plaintiffs' four-plex tenants a letter advising that the tenants should vacate the premises because the property was to be condemned.

Public court records attached to the parties' briefing indicate that the Court of Eminent Domain initially granted the City the right of immediate title and possession of Plaintiff's property on August 2, 2018 (*see* Resp. Opp. Ex. B, ECF No. 9-2), but then set aside that decision by agreed order on October 16, 2018. (*See* Resp. Opp. Ex. C, ECF No. 9-3.) On January 7, 2019, the Court of Eminent Domain entered an Agreed Final Judgment, which ordered

> that total compensation and damages due to Defendants, Keshav G. Mangal and Mukesh K. Mangal, is $160,000.00; inclusive of any additional amounts that may be allowed by statute or otherwise *with the sole exception of Defendants' claims regarding removal of their tenants and the use of 'quick take' by the City* . . . .

(Mot. Dismiss Ex. A, 2, ECF No. 3-1 (emphasis added).) Thus, the Agreed Final Judgment entered in the Court of Eminent Domain did not dispose of all of Plaintiffs' claims related to the City's exercise of eminent domain over their four-plex. Explicitly not resolved by the Agreed Final Judgment was Plaintiffs' claim that the City effected an earlier taking by sending a letter to Plaintiffs' tenants advising them to vacate the premises because the property was going to be

condemned. The same is true of Plaintiffs' claim that the City's use of Mississippi's "quick take" procedure was improper. Plaintiffs' Complaint, filed in state court on February 20, 2019, asserts claims under 42 U.S.C. § 1983 for violation of their Fifth and Fourteenth Amendment rights and rights under the corresponding provisions of the Mississippi Constitution.

On April 9, 2019, the City removed this case from the County Court of Jackson County, Mississippi, invoking federal question jurisdiction. Shortly thereafter, the City filed the instant Motion to Dismiss. The Motion argues (1) Plaintiffs fail to state a constitutional takings claim, (2) any takings claim Plaintiffs could state would be unripe, and (3) any other claims made by Plaintiffs are too vague to plead a plausible claim to relief.

## II. DISCUSSION

a. <u>Motion to Dismiss Standard</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views them in the light most favorable to Plaintiff. *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 199 (5th Cir. 2016). But "the

complaint must allege more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Jabaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

"Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The orders entered in the proceedings before the Special Court of Eminent Domain, though not specifically referred to in Plaintiffs' Complaint, are clearly central to their claim. Moreover, these orders may be considered because they are all matters of public record. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("[T]he cited documents are public records subject to judicial notice on a motion to dismiss."); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). The Court may thus consider these orders without converting the City's Motion to one for summary judgment.

b. <u>The Issue of Ripeness is Mooted by a Recent Supreme Court Decision</u>

The City originally argued in its Motion that Plaintiffs' takings claim is unripe because Plaintiffs had not sought compensation for the alleged taking through available, adequate state procedures. Indeed, Plaintiffs had voluntarily dismissed from the Special Court of Eminent Domain the claims now before this Court. *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172 (1985) created this ripeness doctrine. In the intervening period since the Court's Order for supplemental briefing, the Supreme Court overruled *Williamson County*'s state litigation requirement in *Knick v. Township of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019). The ripeness of Plaintiffs' takings claim is no longer an issue.

c. <u>Plaintiffs Have Failed to State a Takings Claim</u>

Plaintiffs' takings claim is premised upon the letter sent by the City to the tenants of the four-plex, which informed the tenants that (1) the City had "obtained an Order of Immediate Title and Possession" regarding the property, (2) the property was scheduled for demolition, (3) the tenants should "make plans for immediate relocation," and (4) the City provides relocation assistance for those in need of it. (Resp. Opp. Ex. D, at 1, ECF No. 9-4.) Because this letter allegedly caused Plaintiffs' tenants to promptly vacate the premises and cease paying rent, Plaintiffs claim the City's conduct constituted a taking. However, accepted as true, Plaintiffs' allegations fail to state a takings claim.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897), directs that 'private property' shall not 'be taken for public use, without just compensation.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163-64 (1998). "[T]hough the classic taking is a transfer of property to the State or to another private party by eminent domain, the Takings Clause applies to other state actions that achieve the same thing." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Envtl. Prot.*, 560 U.S. 702, 713 (2010); *see Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 321-23 (2002) (explaining that a taking requires government confiscation or physical occupation, or in the case of a regulatory taking, a regulation so severe that it leaves no reasonably economically viable use of the property).

> Thus, when the government uses its own property in such a way that it destroys private property, it has taken that property. Similarly, our doctrine of regulatory takings aims to identify regulatory actions that are functionally equivalent to the classic taking. Thus, it is a taking when a state regulation forces a property owner to submit to a permanent physical occupation or deprives him of all economically beneficial use of his property.

*Stop the Beach*, 560 U.S. at 713 (citations and internal quotation marks omitted).

Plaintiffs do not indicate whether they allege the City's conduct to be a physical taking or a regulatory taking.[1] It is clear that up until the point at which the Agreed Final Order was entered in the eminent domain court, the City did not

---

[1] The direct appropriation of Plaintiffs' four-plex – which is not at issue in this case and which was resolved in the Special Court of Eminent Domain – was a physical taking. *See Washoe Cty. Nev. v. United States*, 319 F.3d 1320, 1326 (Fed. Cir. 2003).

– 6 –

physically occupy Plaintiffs' property. A recent decision by the Federal Circuit Court of Appeals also makes clear that Plaintiffs have not alleged facts establishing either a physical taking of their property or a regulatory taking that similarly rises to the level of a per se taking.[2]

In *Katzin v. United States*, 908 F.3d 1350 (Fed. Cir. 2018), the Fish and Wildlife Service faxed, to a prospective buyer of the plaintiff's land, documents detailing the federal government's assertions of ownership over that land. The prospective buyer withdrew from the purchase agreement, and several other potential buyers refused to purchase the property. The plaintiff filed suit claiming that the government's fax constituted a non-possessory physical taking and also rendered the property inalienable. The Federal Circuit disagreed, holding that "the government's mere sharing of information about its claim of ownership to real property with a third party does not constitute a physical taking (or a *per se* regulatory taking) of that property." *Katzin*, 908 F.3d at 1361. "By sending the Beasley fax, the government did not: physically occupy some part of Plaintiffs' property, require Plaintiffs to suffer a permanent physical invasion, directly appropriate Plaintiffs' property, effect the functional equivalent of an ouster of Plaintiffs' possession, or deprive Plaintiffs of all economically beneficial use of Plaintiffs' property." *Id.* at 1362. "Indeed, the Beasley fax did nothing more than

---

[2] "[T]wo categories of regulatory actions will generally be deemed to be *per se* takings: where the government action requires 'an owner to suffer a permanent physical invasion of her property' and where government 'regulation[s] completely deprive[ ] an owner of all economically beneficial use of her property.'" *Katzin v. United States*, 908 F.3d 1350, 1361 (Fed. Cir. 2018) (quoting *Casitas Mun. Water Dist. v. United States,* 543 F.3d 1276, 1289 (Fed. Cir. 2008)).

disseminate information about the government's property claims to Mr. Klaber and other potential buyers; it did not actually change any rights in any part of Parcel 4." *Id.*

Similarly, in this case, the City sent a letter to Plaintiffs' tenants informing them that the property in which they resided was going to be condemned and that the City could provide moving assistance. The letter did not prevent Plaintiffs from selling the property or oust Plaintiffs from the possession of their property. Rather, the letter "disseminated information about the government's claims," and the tenants (and, perhaps, the market) incorporated that information into their future decision-making. *Id.* As explained by the Federal Circuit in *Katzin*, this conduct constituted neither a physical taking nor a per se regulatory taking.

Unlike physical takings claims, regulatory takings claims are governed by an ad hoc fact-intensive assessment of several factors identified by the Supreme Court in *Pennsylvania Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978).

> [T]he Court's decisions have identified several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations. So, too, is the character of the governmental action. A "taking" may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good.

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978) (citations omitted).

Plaintiffs do not address any of these factors in their Complaint or their briefing. They assert that they were deprived of the rental income they might have otherwise received from the time their tenants vacated the property to the date the City acquired the property by virtue of the Agreed Final Judgment. But they overlook the underlying need for the asserted regulation, itself, to impact Plaintiffs' property. Here, City's conduct was not directed at – and did not interfere with – the plaintiffs. The City's conduct was directed at Plaintiffs' tenants, who decided to vacate the property. This government action towards third parties – though it may have frustrated Plaintiffs' contracts with those tenants – did not constitute a regulatory taking. *See Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1381 (Fed. Cir. 2008) ("Huntleigh alleges that it suffered a loss of business as a result of the government's regulation of a third party. The federal government imposed screening obligations upon commercial airlines in 1974. With the enactment of ATSA in 2001, however, Congress drastically reduced the demand for Huntleigh's services. ATSA did not, however, regulate Huntleigh directly. Rather, it modified governmental regulation of the airlines, which resulted in adverse economic consequences for Huntleigh. . . . In other words, ATSA had the effect of 'frustrating' Huntleigh's business expectations, which does not form the basis of a cognizable takings claim.").

To the extent that Plaintiffs claim that the City took their property by commencing condemnation proceedings, this claim also fails as a matter of law. The act of commencing condemnation proceedings in good faith similarly does not constitute a regulatory taking "even though the commencement of such proceedings may diminish the market value of the property." *Willard v. City of Beaumont*, 761 F.2d 1100, 1101 (5th Cir. 1985) (citing *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 14-15 (1984)).

Additionally, nothing suggests that a takings claim asserted under Section 17 of the Mississippi Constitution[3] is treated differently than a takings claim under the Fifth Amendment of the Constitution of the United States, and Plaintiffs do not make such an argument. Without proof to the contrary, Plaintiffs have failed to state a claim under the Mississippi Constitution for the same aforementioned reasons.

   d.  <u>Plaintiffs Fail to State Any Other Plausible Claim</u>

Plaintiffs purport to make a claim regarding the impropriety of the City having used Mississippi's "quick take" procedure to take possession of their property. However, Plaintiff's do not elaborate further. They do not explain how or why the City's use of the procedure was wrong, or what steps the City took that were improper. If Plaintiffs intend to attack the propriety of the procedure itself,

---

[3] "Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public." Miss. Const. § 17.

they also do not explain its infirmities. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). Plaintiffs' allegations do not allow the Court to reasonably infer the City's liability for improperly utilizing the "quick take" procedure.

## III. CONCLUSION

The Court has determined that Plaintiffs fail to state a takings claim under the Federal and State constitutions and that Plaintiffs otherwise fail to otherwise articulate a claim for relief based on the City's use of the "quick take" procedure. The City's Motion to Dismiss will therefore be granted, and Plaintiffs claims will be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [3] Motion to Dismiss filed by Defendant City of Pascagoula is **GRANTED**. Because this is the first time Plaintiffs' claims have been dismissed, they are dismissed **without prejudice**, and Plaintiffs will be granted an opportunity to amend their Complaint so as to state a claim for relief. Any amended complaint must be filed within fourteen (14) days of the entry of this Order. Failure to timely file amended allegations will result in the entry of a final judgment in this matter.

**SO ORDERED AND ADJUDGED** this the 29th day of July, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE