IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| KESHAV G. MANGAL and MUKESH MANGAL | PLAINTIFFS |
| v. | CAUSE NO. 1:19CV232-LG-RHW |
| CITY OF PASCAGOULA, JACKSON COUNTY, MS | DEFENDANT |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**BEFORE THE COURT** is the [19] Motion to Dismiss First Amended Complaint filed by Defendant City of Pascagoula. The Motion argues that Plaintiffs' Complaint should be dismissed because *res judicata* bars Plaintiff's claims and Plaintiffs otherwise fail to state a claim for relief. The Motion is fully briefed. Having considered the submissions of the parties, the record, and relevant law, the Court finds that Defendant's Motion to Dismiss should be granted in part and denied in part. It will be denied to the extent that Plaintiffs state a takings claim under the Fifth Amendment and otherwise granted

I. BACKGROUND

The Court dismissed Plaintiffs' original Complaint for failure to state a claim. (*See* Mem. Op. & Order Granting Defendant's Motion to Dismiss, ECF No. 14.) Plaintiffs were granted leave to amend their allegations to state a claim for relief and have filed their [15] First Amended Complaint. The First Amended Complaint

contains no new factual allegations but attempts to better articulate violations of Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983.

Plaintiffs Keshav Mangal and Mukesh Mangal owned a four-plex property located on Jackson Avenue in Pascagoula, Mississippi. Plaintiffs allege that the City of Pascagoula attempted to exercise eminent domain and take their property under a "quick take" procedure, *see* Miss. Code Ann. §§ 11-27-81 to 89, for the purpose of expanding city-owned athletic fields. The City filed suit in the Special Court of Eminent Domain of Jackson County, Mississippi, paid 85% of a court-appointed appraiser's determined appraisal value for their property into the eminent domain court's registry, and gained immediate possession of Plaintiff's property. Plaintiffs assert that the City had no right to utilize the statutory "quick take" procedure – and had received legal counsel that the "quick take" procedure was inapplicable under the circumstances – but nonetheless did so and mailed Plaintiffs' four-plex tenants a letter advising that the tenants should vacate the premises because the property was to be condemned.

Filings in the state court record, which are attached to the City's Motion to Dismiss, indicate that the Court of Eminent Domain initially granted the City the right of immediate title and possession of Plaintiffs' property on August 2, 2018 (*see* Mot. Dismiss Ex. A, at 80-81, ECF No. 19-1), but then set aside that decision by agreed order on October 16, 2018. (*See id.* at 36.) On January 7, 2019, the Court of Eminent Domain entered an Agreed Final Judgment, which stated the following:

> The Court is advised that a compromise settlement has been reached between the parties, fixing Defendants,

> Keshav G. Mangal and Mukesh K. Mangal, total
> compensation and damages in the amount of $160,000.00;
> and that all issues before the Court have now been
> resolved between the parties. The Court, being fully
> advised in the premises, accepts said settlement
> agreement, with the parties being bound hereto as if there
> had been a complete trial by jury and a Judgment
> rendered accordingly.
>         **IT IS THEREFORE, ORDERED AND ADJUDGED** that this Agreed Final Judgment be entered in this cause; that the completion of a trial by jury is waived by all parties; that total compensation and damages due to Defendants, Keshav G. Mangal and Mukesh K. Mangal, is $160,000.00; inclusive of any additional amounts that may be allowed by statute or otherwise *with the sole exception of Defendants' claims regarding removal of their tenants and the use of 'quick take' by the City* . . . .

(*Id.* at 12-13 (emphasis added).)

The Agreed Final Judgment entered in the Court of Eminent Domain apparently did not dispose of all of Plaintiffs' claims related to the City's exercise of eminent domain over their four-plex. Explicitly not resolved by the Agreed Final Judgment was Plaintiffs' claim that the City's reliance on Mississippi's statutory "quick take" procedure to take immediate possession of the property was unlawful.

Plaintiffs allege that the City "engaged in a course of conduct that resulted in the violation of the Plaintiffs' right[s]" to equal protection under the law and procedural and substantive due process of law pursuant to the Fifth and Fourteenth Amendments and the corresponding provisions of the Mississippi state constitution. (Am. Compl. 2, ECF No. 15.) They also reassert a takings claim under the Fifth and Fourteenth Amendments and corresponding provisions of the Mississippi constitution. (*Id.* at 2-3.)

The City filed the instant Motion to Dismiss on August 22, 2019. The Motion argues (1) that Plaintiffs' claims are barred by the doctrines of *res judicata* and claim splitting and (2) that Plaintiffs otherwise fail to state a violation of their constitutional rights.

## II. DISCUSSION

a. <u>Motion to Dismiss Standard</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views them in the light most favorable to Plaintiff. *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 199 (5th Cir. 2016). But "the complaint must allege more than labels and conclusions, a formulaic recitation of the elements of a cause of action will not do, and factual allegations must be enough to raise a right to relief above the speculative level." *Jabaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

"Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The orders entered in the proceedings before the Special Court of Eminent Domain, though not specifically referred to in Plaintiffs' Complaint, are clearly central to their claim. Moreover, these orders may be considered because they are all matters of public record. *See Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) ("[T]he cited documents are public records subject to judicial notice on a motion to dismiss."); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). The Court may thus consider these orders without converting the City's Motion to one for summary judgment.

 b. <u>Plaintiffs' Claims are Not Barred by *Res Judicata*</u>

"To determine the preclusive effect of a state court judgment in a federal action, federal courts must apply the law of the state from which the judgment emerged." *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 (5th Cir. 2006) (quotation marks omitted); *see also Thompson v. Dallas City Attorney's Office*, 913 F.3d 464, 467 (5th Cir. 2019) (citing *Allen v. McCurry*, 449 U.S. 90, 94-105 (1980)). Accordingly, Mississippi law applies to this case.

> Under Mississippi law, plaintiffs must consider carefully the potentially preclusive effect of claim-splitting. "The doctrine of res judicata bars parties from litigating claims 'within the scope of the judgment' in a prior action."

– 5 –

> *Anderson v. LaVere,* 895 So. 2d 828, 832 (Miss. 2004).
> "This includes claims that were made or should have been
> made in the prior suit." *Id.* "Res judicata reflects the
> refusal of the law to tolerate a multiplicity of litigation."
> *Little v. V & G Welding Supply, Inc.,* 704 So. 2d 1336,
> 1337 (Miss. 1997). "It is a doctrine of public policy
> designed to avoid the expense and vexation attending
> multiple lawsuits, conserve judicial resources, and foster
> reliance on judicial action by minimizing the possibilities
> of inconsistent decisions." *Harrison v. Chandler-Sampson
> Ins., Inc.,* 891 So. 2d 224, 232 (Miss. 2005).

*Hill*, 17 So. 3d at 1084.

The doctrine of *res judicata* has two primary functions: bar, which precludes claims that were actually litigated in a previous action, and merger, which prevents litigation of any claim that should have been litigated in a previous action. *Id.* at 1084-85. However, only unasserted "claims that *could* have been brought in the prior action are barred." *Id.* at 1085 (emphasis added). *Res judicata* "does not bar claims that could not have been asserted in the prior case because of limits on the court's subject matter jurisdiction." *McCarty v. Wood*, 249 So. 3d 425, 430 (Miss. Ct. App.), *cert. denied,* 250 So. 3d 1269 (Miss. 2018) (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985); *Restatement (Second) of Judgments* § 26(1)(c) (1982); 18 Charles Alan Wright, Arthur R. Miller et al., *Federal Practice and Procedure* § 4412 (3d ed. 2002)).

Plaintiffs' § 1983 claims could not have been brought in the Special Court of Eminent Domain because such claims are not within that court's jurisdiction. *See id.* at 433 ("The Supreme Court's opinion in [*Delta MK, LLC v. Mississippi Transportation Commission*, 57 So. 3d 1284 (Miss. 2011)] clarified that although the

– 6 –

special court of eminent domain has 'pendent jurisdiction' to resolve 'questions of title' that 'may arise from [condemnation] proceedings,' [*McDonald's Corp. v. Robinson Indus., Inc.*, 592 So. 2d 927, 936 (Miss. 1991)], the special court does not have jurisdiction over independent claims that seek relief on alternative legal theories."). The Mississippi Supreme Court has explicitly upheld a special court of eminent domain's dismissal of due process and civil rights claims, asserted in an inverse-condemnation action, for lack of subject matter jurisdiction. *See Delta MK*, 57 So. 3d at 1291. There is similarly no reason to conclude, based on *Delta MK*, that a special court of eminent domain has jurisdiction to hear a claim that the property subject to condemnation was actually taken by earlier government action. *See id.* Moreover, the City's condemnation proceeding could only have been brought in the Special Court of Eminent Domain.[1] *See* Miss. Code Ann. §§ 11-27-3, 11-27-5.

The City cites *Cary v. City of Watseka* as a factually identical case supporting its position that Plaintiffs' claims are barred by *res judicata*. 870 F. Supp. 2d 567 (C.D. Ill. 2012), *aff'd*, 510 F. App'x 473 (7th Cir. 2013). However, *Cary* is materially distinguishable. Even if Illinois law provides the same preclusive parameters as Mississippi law, the plaintiffs in *Cary* could have asserted their later-barred claim as a counterclaim in the original condemnation action:

> Here, the Carys' original counterclaim alleges that they were denied just compensation for the taking of their property. The Carys alleged no constitutional violations in state court; therefore the original counterclaim brought by the Carys was germane to the eminent domain case,

---

[1] For this reason, the same jurisdictional limitations preempting foreclosure of Plaintiffs' claims on *res judicata* would not be present in the context of an inverse-condemnation action filed in a Mississippi circuit court.

– 7 –

> because it dealt with the sole issue that eminent domain
> proceedings were designed to determine.

*Id.* at 570. Because Plaintiffs could not have raised their constitutional violations as counterclaims to the condemnation proceeding in the Special Court of Eminent Domain, their claims in this case are not barred by *res judicata*.[2]

c. <u>Plaintiffs Have Stated a Takings Claim</u>

Plaintiffs reassert a takings claim under the Fifth and Fourteenth Amendments and corresponding provisions of the Mississippi constitution. (Am. Compl. 2-3, ECF No. 15.) This Court previously ruled that the City's act of sending letters to Plaintiffs' tenants informing them of the immediate condemnation of the property was not a taking under the Fifth Amendment. (*See* Mem. Op. & Order Granting Defendant's Motion to Dismiss 5-10, ECF No. 14.) The Amended Complaint instead asserts that the City's illegal use of Mississippi's "quick take" statute constituted a taking.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897), directs that 'private property' shall not 'be taken for public use, without just compensation.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 163-64 (1998). "[T]hough the classic taking is a transfer of property to the State or to another private party by eminent domain, the Takings Clause applies to other state actions that achieve the same thing." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of*

---

[2] It is therefore of no matter that the Agreed Final Judgment entered by the eminent domain court stated that the claims now brought in this case were not resolved in the condemnation action. That court did not have subject matter jurisdiction to hear those claims to begin with.

– 8 –

*Envtl. Prot.*, 560 U.S. 702, 713 (2010); *see Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 321-23 (2002) (explaining that a taking requires government confiscation or physical occupation, or in the case of a regulatory taking, a regulation so severe that it leaves no reasonably economically viable use of the property).

In the prior Memorandum Opinion granting the City's first Motion to Dismiss, the Court stated, "It is clear that up until the point at which the Agreed Final Order was entered in the eminent domain court, the City did not physically occupy Plaintiffs' property." (Mem. Op. & Order Granting Defendant's Motion to Dismiss 6-7, ECF No. 14.) Upon further consideration, that observation appears to have been in error. The Special Court of Eminent Domain entered an Order on August 2, 2018 that granted the City "the right of immediate title and possession and entry upon" Plaintiffs' four-plex, dependant only on the City first depositing 85% of an appraiser's valuation of the property (which amounted to $121,975.00). (Mot. Dismiss Ex. A, at 80-81, ECF No. 19-1). On August 13, 2018, the City deposited $121,975.00 into the state court's registry, perfecting the eminent domain court's August 2, 2018 Order. *See Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 11-13 (1984) (stating that a taking is effectuated upon the Government tendering payment). Thus, by court order, the City acquired title to and possession of Plaintiffs' property.

This is the very definition of a classic taking: "a transfer of property to the State . . . by eminent domain." *Stop the Beach Renourishment*, 560 U.S. at 713. It is

– 9 –

of no matter that the order was set aside slightly more than a month later, or that it was likely contrary to law.[3] The City still acquired title to and possession of Plaintiffs' property prior to the Agreed Final Judgment later entered on January 7, 2019.

The City argues that any damages stemming from an earlier taking have already been paid to the Plaintiffs because Plaintiffs are only entitled to the fair market value of their property, regardless of whether it is taken through traditional eminent domain proceedings or use of the quick take procedure. (*See* Mem. Supp. Mot. Dismiss 14-15, ECF No. 20.) It is true that the remedy for a taking is the property's fair market value, but the property owner is due that just compensation at the time the property was taken. *Kirby Forest Indus.*, 467 U.S. at 10. "If disbursement of the award is delayed, the owner is entitled to interest thereon sufficient to ensure that he is placed in as good a position pecuniarily as he would have occupied if the payment had coincided with the appropriation." *Id.*; *see also* Miss. Code. Ann § 11-27-87 ("If the plaintiff takes title to and possession of the land condemned pursuant to the order of the court and the amount of compensation as determined upon final disposition of the case is in excess of the amount of the deposit, the plaintiff shall pay interest to the owner at the rate of eight percent (8%)

---

[3] Municipalities may only exercise the statutory "right of immediate possession" to acquire rights-of way for (1) connecting existing roads and streets to highways, (2) widening existing roads and streets, or (3) water, sewer, drainage and other public utility purposes. Miss. Code. Ann § 11-27-81. The City's stated purpose – the expansion of the City's athletic fields – does not fit within the contours of permissible purposes for utilizing the "quick take" procedure.

– 10 –

per annum upon the amount of such excess from the date of the filing of the complaint until payment is actually made.").

  d. <u>Plaintiffs Fail to State an Equal Protection Violation or a Due Process Violation</u>[4]

Plaintiffs assert that that the City "engaged in a course of conduct that resulted in the violation of the Plaintiffs' right[s]" to equal protection under the law and procedural and substantive due process of law pursuant to the Fifth and Fourteenth Amendments and the corresponding provisions of the Mississippi state constitution. (Am. Compl. 2, ECF No. 15.) However, Plaintiffs' factual allegations do not establish any such violation of their constitutional rights.

To state an equal protection claim (which here, would presumably be a class-of-two claim), Plaintiffs must show (1) that they were "intentionally treated differently from others similarly situated" and (2) that "there was no rational basis for the difference in treatment." *Rountree v. Dyson*, 892 F.3d 681, 685 n.10 (5th Cir.), *cert. denied,* 139 S. Ct. 595 (2018) (quoting *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012)). Plaintiffs offer nothing besides conclusory allegations as to the intent behind the City's actions. Moreover, it is not clear how Plaintiffs were treated differently from those similarly situated, or who those similarly situated would be. Finally, Plaintiffs do not contend that no rational basis supports their treatment by the City.

---

[4] Because Plaintiffs do not suggest that the Court's analysis of their claims under the Mississippi Constitution would be any different than the analysis of their claims under the United States Constitution, the Court proceeds as though the treatment of their claims is the same under both.

The Due Process Clause of the Fourteenth Amendment encompasses a guarantee of fair procedure. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). The deprivation by state action of a constitutionally protected interest is not itself a violation of procedural due process. *Id.* Instead, it is the deprivation of such an interest without due process of law that is unconstitutional. *Id.*; *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). "Procedural due process claims are subject to a two-step inquiry: The first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *ODonnell v. Harris Cty.*, 892 F.3d 147, 157 (5th Cir. 2018) (internal quotation marks omitted). It is undisputed that Plaintiffs had a property interest in their four-plex and that they also were given a procedure attendant upon the taking of their four-plex. The City initiated an eminent domain proceeding to which Plaintiffs were party, and the Plaintiffs objected (with success) to the City's use of the "quick take" procedure. Accepting Plaintiffs' allegations as true, the state process afforded them the opportunity to contest the deprivation of their property interest.[5]

"Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them.'"

---

[5] Additionally, and alternatively, Plaintiffs' procedural due process claim appears to be unripe because Plaintiffs made no effort to collect just compensation in a state action before filing this federal action. *See Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 305 (5th Cir. 2006); *Liberty Mut. Ins. Co. v. La. Dep't of Ins.*, 62 F.3d 115, 117-18 & n.2 (5th Cir. 1995).

*Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.,* 489 F.3d 669, 673 n.3 (5th Cir. 2007) (quoting *Zinermon,* 494 U.S. at 125). However, where a plaintiff alleges a takings claim and a substantive due process claim together, courts must determine the extent to which the due process claim "rests on protections that are also afforded by the Takings Clause." *John Corp. v. City of Hous.*, 214 F.3d 573, 583 (5th Cir. 2000). Plaintiffs allege that the same City action – the unlawful use of the quick take procedure – both constituted a taking of their property and violated their substantive due process rights. Plaintiffs do not challenge the constitutionality of the statutory "quick take" procedure or assert some other claim besides the deprivation of their property without just compensation. *See Steward v. City of New Orleans*, 537 F. App'x 552, 556 (5th Cir. 2013). Rather, Plaintiffs' allegations are "simply a takings claim under a substantive due process label." *Id*. Therefore, the substantive due process claim is not "sufficiently independent from the takings claim to stand on its own." *Id.*; *see also Austin Apartment Ass'n v. City of Austin*, 89 F. Supp. 3d 886, 901 (W.D. Tex. 2015).

### III. CONCLUSION

The Court has determined that the First Amended Complaint states a takings claim, but fails to state any other violation of the Fifth or Fourteenth Amendments (and their corresponding state provisions). The City also argues in passing – and the plaintiffs concede – that punitive damages are unavailable under 42 U.S.C. § 1983. Plaintiffs' punitive damages claim is therefore dismissed. Based

on the foregoing, the City's Motion to Dismiss will be granted in part and denied in part.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [19] Motion to Dismiss First Amended Complaint filed by Defendant City of Pascagoula is **GRANTED IN PART AND DENIED IN PART**. The Motion is **DENIED** insofar as Plaintiffs' takings claim is concerned and is otherwise **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 12th day of December, 2019.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE